# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. _____

RYAN BROWN;
BENJAMIN BROWN,

      Plaintiffs,

v.

COLORADO SPRINGS, COLORADO; and
DAVID NELSON, in his individual capacity;
ALLISON DETWEILER, in her individual capacity;
STEVEN BISCARO, in his individual capacity,

      Defendants.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiffs Ryan Brown and Benjamin Brown, by and through their counsel, Darold W. Killmer and Andy McNulty of KILLMER, LANE & NEWMAN, LLP, in cooperation with the AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF COLORADO and Mark Silverstein, Sara R. Neel, and Rebecca T. Wallace of the AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF COLORADO, respectfully allege for their Complaint and Jury Demand as follows:

## INTRODUCTION

We must not pretend that the countless people who are routinely targeted by police are "isolated." They are the canaries in the coal mine whose deaths, civil and literal, warn us that no one can breathe in this atmosphere. They are the ones who recognize that unlawful police stops corrode all our civil liberties and threaten all our lives. Until their voices matter too, our justice system will continue to be anything but.

*Utah v. Strieff*, 136 S. Ct. 2056, 2071 (2016) (Sotomayor, J., dissenting).

1.      Ryan and Benjamin Brown were targeted by Colorado Springs Police Department officers on March 25, 2015, because they are young, African-American men.

2.      Ryan and Benjamin Brown were driving back to their home, in a primarily white neighborhood, in Colorado Springs, Colorado on March 25, 2015. As they approached, and prepared to take a right-hand turn, they were stopped by two Colorado Springs officers, David Nelson and Alison Detweiler.

3.      Officer Nelson initiated the stop because Ryan and Benjamin Brown are African-American. He proceeded to harass Ryan and Benjamin by: refusing to tell them the reason that he had pulled them over, pointing his taser at Benjamin, demanding that Benjamin exit the vehicle, and, searching Benjamin. Officer Nelson searched Benjamin pursuant to the Colorado Springs Police Department's custom, policy and/or practice of suspicionless traffic-stop-and-frisks, by which officers unjustifiably require drivers they stop to exit their vehicle and submit to a search, regardless of whether there's any reasonable suspicion that the driver has committed a crime or is dangerous. This custom, policy or practice is particularly targeted at African-American drivers. Benjamin was eventually arrested and taken to Officer Nelson's squad car in handcuffs.

4.      As Officer Nelson forcefully removed Benjamin from the car, Ryan began recording the interaction on his phone. Once Officer Nelson noticed that Ryan was filming the interaction, he ordered Ryan out of the car. As Officer Detweiler pointed her gun at Ryan, Officer Nelson forcefully removed Ryan from the car, threw him onto the snow-covered ground, and forced his face into the snow. Officer Nelson threw Ryan's phone in the snow, thereby stopping the recording. Ryan was arrested, placed into handcuffs, and escorted to Officer Detweiler's car.

5.      After their arrest, Ryan and Benjamin filed a complaint with the Colorado Springs Police Department's Internal Affairs Bureau. In response, the Bureau stated that the officers had done nothing wrong. Colorado Springs also prosecuted Ryan and Benjamin vigorously. These actions were consistent with Colorado Springs' custom of condoning and ratifying unconstitutional behavior by its officers.

6.      Plaintiffs Ryan and Benjamin Brown bring this action as the canaries in the coal mine and seek to vindicate their constitutional rights.

## JURISDICTION AND VENUE

7.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331. This action is authorized and instituted pursuant to 42 U.S.C. § 1983. Jurisdiction supporting Plaintiffs' claims for attorney's fees and costs is conferred by 42 U.S.C. § 1988.

8.      The acts described herein were committed within the jurisdiction of the United States District Court for the District of Colorado. Venue is proper pursuant to 28 U.S.C. § 1391.

## PARTIES

9.      Plaintiff Ryan Brown is a resident of, and domiciled in, the State of Colorado.

10.      Plaintiff Benjamin Brown is a resident of, and domiciled in, the State of Colorado.

11.      Defendant Colorado Springs, Colorado is a Colorado municipal corporation.

12.      Defendant David Nelson is a resident of, and domiciled in, the State of Colorado. At all times relevant to this Complaint, he was acting under the color of state law as a law enforcement officer for Colorado Springs, Colorado.

13.      Defendant Allison Detweiler is a resident of, and domiciled in, the State of Colorado. At all times relevant to this Complaint, she was acting under the color of state law as a law enforcement officer for Colorado Springs, Colorado.

14.     Defendant Steven Biscaro is a resident of, and domiciled in, the State of Colorado. At all times relevant to this Complaint, he was acting under the color of state law as a sergeant for Colorado Springs, Colorado.

## FACTUAL ALLEGATIONS

15.     Benjamin Brown and Ryan Brown are young, African-American men. At all times relevant to this complaint, Benjamin Brown was twenty-two years old and Ryan Brown was thirty-one years old.

16.     Both Benjamin Brown and Ryan Brown live with their family in a quiet, residential area of Colorado Springs, Colorado.

17.     Demographically, Benjamin Brown's and Ryan Brown's immediate neighborhood is predominately white. Based on the American Community Survey conducted by the Census in 2013, only 158 African-Americans out of population of 3,140 lived in the census tract where Benjamin Brown's and Ryan Brown's home is located, Census Tract 58. African-Americans only made up 5% of Benjamin Brown's and Ryan Brown's neighborhood. Comparatively, 2,538 Whites lived in that same census tract, making up 81% of the neighborhood.

18.     Ryan and Benjamin Brown were driving home through this predominantly white neighborhood, their own neighborhood, on March 25, 2015.

19.     It was approximately 11:10 a.m. when they made it into their subdivision, returning home from a bakery where they had purchased bread.

20.     When Ryan and Benjamin Brown were approximately one block from their home, they noticed two Colorado Springs police cars driving behind them.

4

21.     One car, driven by Officer Allison Detweiler, sped up and passed Ryan and Benjamin in the left lane.

22.     The other car, driven by Officer David Nelson, slowed down and tailed Ryan and Benjamin, driving at a consistent speed in the blind spot on the rear-left of Ryan and Benjamin's car.

23.     As Ryan and Benjamin slowed to turn right onto their street, the police car driven by Officer Nelson pulled directly behind them and activated its lights. At this time, Officer Nelson either knew or assumed the occupants of the car were African-American.

24.     At the same time that Officer Nelson activated his lights, Officer Detweiler – who had passed Ryan and Benjamin – turned around and pulled behind the first police car.

25.     Officer Dave Nelson initiated the traffic stop, pulling Ryan and Benjamin Brown over.

26.     Officer Nelson stated in a later interview that he wanted "to find a reason to stop" Ryan and Benjamin's car. Officer Nelson also stated in that same interview that he stopped Ryan and Benjamin because he had seen their car drive slowly in a neighboring "high-crime area" earlier that morning and that he believed that they might have been involved in "drug activity."

27.     In his official narrative for the Colorado Springs Police Department, Officer Nelson stated that he initiated the traffic stop of Ryan and Benjamin Brown's car because he had seen them drive through a "high crime area" where "lots of drugs [were] being sold" earlier in the day, sometime between the start of his shift at 7:30 a.m. and 9:00 a.m.

28.     Officer Nelson did not see Ryan and Benjamin's car that morning. They did not drive through the "high-crime area" referenced by Officer Nelson. Ryan and Benjamin were at

their house with their car at the time that Nelson claimed to have seen their car in the "high crime area."

29.     Officer Nelson's real reason for pulling over Ryan and Benjamin Brown was the color of their skin. Officer Nelson initiated the traffic stop of Ryan and Benjamin Brown because they were African-American drivers in a predominantly white neighborhood.

30.     The language utilized by Officer Nelson in his articulated reasoning for pulling over Ryan and Benjamin Brown, specifically that he targeted them simply because they were driving slowly through a "high crime area, is law enforcement code for "driving while black."

31.     Officers Nelson and Detweiler exited their vehicles at the same time, with Officer Nelson approaching the driver side of Ryan and Benjamin's vehicle and Officer Detweiler approaching the passenger side.

32.     Officer Detweiler stayed near the rear of the vehicle and did not approach the passenger side window, where Ryan was seated.

33.     Officer Nelson approached the driver's side window and Benjamin rolled down his window a few inches so that he could communicate with Officer Nelson.

34.     Upon first contact, Officer Nelson was hostile and rude towards both Benjamin and Ryan.

35.     Officer Nelson demanded in a hostile tone that Benjamin provide his license and immediately followed up by questioning whether Benjamin's license was even valid, despite having no reasonable basis for suspecting that Benjamin's license was suspended.

36.     Benjamin replied that he did not have his license on him, but that it was at his house,located just a few houses down from where they were stopped.

37.     Officer Nelson again demanded that Benjamin produce some form of identification. Benjamin again informed Officer Nelson that his identification was at his home, around the corner.

38.     Ryan then asked Officer Nelson why he had initiated the traffic stop. Officer Nelson unjustifiably refused to tell Ryan why he had initiated the stop.

39.     The Colorado Springs Police Department has an explicit policy requiring officers to inform drivers of the basis for a traffic stop. Despite this explicit policy, Officer Nelson repeatedly refused to provide Benjamin and Ryan this information. Evincing that this explicit policy is a policy in name only, Officer Nelson's failure to provide Ryan and Benjamin a basis for the traffic stop was not so much as discussed during the Internal Affairs investigation into Officer Nelson's illegal and unjustified stop of Ryan and Benjamin.

40.     Officer Nelson refused to answer because he had observed no suspicious activity or criminal behavior. Instead, his decision to stop Ryan and Benjamin's vehicle was premised on the color of Ryan and Benjamin's skin.

41.     According to Officer Detweiler, at this point, Officer Nelson "escalated pretty quick, his voice and his responses escalated fairly quickly." Officer Nelson opened Benjamin's door and, according to Officer Detweiler, Officer Nelson "started yelling at the driver to exit the car."

42.     Officer Nelson unholstered his taser, turned it on, aimed it at Benjamin, and ordered him out of the car. Benjamin complied with Officer Nelson's command and calmly exited the car with his hands raised. Officer Nelson's threatened use of the taser constituted excessive force under the circumstances.

43.     Meanwhile, Officer Detweiler unholstered her gun and pointed it at Ryan through the passenger-side window. Ryan turned on his phone and began recording the incident. Ryan kept his hands raised as he recorded.

44.     After Officer Nelson removed Benjamin from the car, Officer Detweiler began yelling at Ryan to keep his hands up. Ryan responded to Officer Detweiler's orders and continued to keep his hands raised.

45.     Meanwhile, Officer Nelson ordered Benjamin to put his hands behind his back, kicked Benjamin's legs apart, and pushed him up against the car to apply handcuffs.

46.     Officer Nelson proceeded to conduct an illegal pat-down search of Benjamin's person.

47.     Throughout Benjamin's interaction with Officer Nelson, and despite being subjected to clearly excessive force and an illegal search, Benjamin was completely compliant and followed every order given by Officer Nelson. Officer Nelson found no weapons or contraband during this search.

48.     Officer Nelson then placed Benjamin, still handcuffed, in the back of his police car.

49.     After placing Benjamin in the back of his police car, Officer Nelson approached the passenger side of the car.

50.     As Officer Nelson approached, Ryan sat with his hands visible in the air.

51.     Officer Nelson then ordered Ryan to unlock the car door, and Ryan complied.

52.     Officer Nelson proceeded to open the car door and pull Ryan out of the car.

53.     Ryan asked if he was being arrested. Both Officer Nelson and Officer Detweiler replied that Ryan was not under arrest and that he was solely being searched for weapons.

(Officer Detweiler stated: "[Y]ou're not under arrest. I just want to check you for weapons . . . ."). Officer Nelson stated: "[W]e just need to check you for weapons.")

54.     Officer Nelson pulled Ryan out of the car by his wrist. According to Officer Detweiler, even though Ryan "wasn't physically fighting us," and "we probably could have handled it with him standing upright," Officer Nelson "throws" Ryan to the ground. As video evidence shows, Officer Nelson then proceeds to force his knee into Ryan's back and aggressively push his face in the snow.

55.     Officer Nelson then handcuffed Ryan and tossed his phone into the snow, which ended the recording.

56.     Throughout this sequence of events, Officer Detweiler had her gun pointed at Ryan.

57.     Afterwards, Officer Detweiler conducted a search of Ryan's person. She found no weapons or contraband of any kind. Ryan, still handcuffed, was placed into the back of Officer Detweiler's police car.

58.     While Ryan was being pulled from the car at gun point and handcuffed, Benjamin was sitting in the back of Officer Nelson's police car watching the scene unfold. Benjamin was terrified by what was happening. He feared for his brother's life, and he began to sob openly.

59.     Nothing about the interaction between Officer Nelson and Ryan or Benjamin Brown would give a reasonable officer an impression that either Ryan or Benjamin was armed or dangerous.

60.     Nevertheless, the officers escalated the stop by yelling, pointing a taser and a gun, demanding Benjamin and Ryan exit their vehicle, handcuffing them, and forcing Ryan's face into the snow. These aggressive acts that dramatically escalated the intensity of the stop were

motivated, in whole or in part, by the color of Benjamin and Ryan's skin. Tellingly, Officer Nelson admitted that "Ferguson" was on his mind during the course of the stop.

61.     After Ryan and Benjamin were detained, Sergeant Steven Biscaro was called to the scene by Officer Nelson.

62.     At the scene, Sgt. Biscaro interviewed both Ryan and Benjamin. Both complained of mistreatment by the officers, particularly Officer Nelson.

63.     Sgt. Biscaro explicitly approved of all of the actions taken by Officers Nelson and Detweiler during this incident. Sgt. Biscaro signed off as the "approving supervisor" on Officer Nelson's police report detailing what occurred during the incident. Further, during an internal affairs interview after the incident, Sgt. Biscaro explicitly approved of the officers' actions in searching and arresting Ryan and Benjamin, stating "I don't have any problem with how they handled the situation." Sgt. Biscaro also stated that he was "wholeheartedly behind" searching Ryan for weapons. Sgt. Biscaro excused the search of Benjamin "because he didn't have any identification on him."

64.     Benjamin was cited for driving without insurance and Obstruction of View or Driving Mechanism.

65.     Officer Detwiler, at Officer Nelson's direction, cited Ryan for Resisting, Interference with a Public Official. According to Sgt. Biscaro, he urged Officer Nelson to charge Ryan. During his interview with internal affairs, Sgt. Biscaro justified the charge because officers had "la[id] hands on" Ryan. Sgt. Biscaro suggested that any use of force by officers should result in citing the individual against whom the force was used. Such circular reasoning by a supervisor serves to ratify police use of force without regard for whether the use of force

was justified. This customary practice foreseeably leads to violations of individual's constitutional rights, including the rights of plaintiffs herein.

66.     No officer had probable cause to believe Ryan had committed a crime. Instead, he was cited to provide post-hoc justification for improper police use of force and in retaliation for protesting police misconduct.

67.     After the incident, Ryan and Benjamin were distraught and angered by their encounter with Officers Nelson and Detweiler. They subsequently submitted a complaint to the Colorado Springs Internal Affairs Bureau complaining of mistreatment.

68.     On June 8, 2015, Ryan and Benjamin received a response from the Colorado Springs Internal Affairs Bureau, which found that the actions of the officers' were "justified, legal and proper."

69.     After Benjamin presented proof of insurance, the driving without insurance charged was dropped. Benjamin pled guilty, under coercion, to the Obstruction of View or Driving Mechanism charge. After entering a plea, which Benjamin entered without counsel, he attempted to withdraw his plea of guilty multiple times. All of his attempts to withdraw his plea of guilty were rejected by the Court.

70.     The charges against Ryan were vigorously pursued but Ryan successfully had the charges dismissed on September 24, 2015.

71.     All of the charges against Ryan and Benjamin lacked a factual basis and were prosecuted to cover up Officer Nelson's and Officer Detweiler's racially motivated and otherwise illegal stop, detention, and treatment of Plaintiffs. At all times relevant to this Complaint: (1) There was no obstruction in the view out of the windshield; (2) Benjamin was

driving in a safe and lawful manner; and (3) Ryan did not obstruct or otherwise resist arrest, other than engaging in First Amendment protected activity.

72.     At all times relevant to this Complaint, Defendant Officers lacked probable cause, reasonable suspicion, or any other legal basis to believe that Plaintiffs had engaged in any criminal activity or were armed or dangerous. Officer Nelson's and Officer Detweiler's stop, treatment, and extended detention of Plaintiffs was illegally motivated by racial bias.

**Unconstitutional Customs, Policies, and/or Practices of the Colorado Springs Police Department**

73.     Upon information and belief, Officer Defendants' stop, detention, and treatment of Plaintiffs was pursuant to Colorado Springs Police Department's custom, policy and/or practice of engaging in racially motivated or otherwise unconstitutional stops, detentions, arrests and treatment.

74.     Based *inter alia* upon observations of Ryan and Benjamin Brown, this incident, and the statements of Officer Nelson, Officer Detweiler, and Sergeant Biscaro about the incident, Colorado Springs has a custom, policy, and/or practice of doing the following to minority individuals: (1) engaging in racial profiling at the initial stop of individuals; (2) searching them without reasonable suspicion that they are armed or dangerous; and (3) unnecessarily detaining them for extended periods of time in an effort to build some basis for arrest. In the instant case, Officer Defendants undertook each of the actions described above against Ryan and Benjamin Brown pursuant to Colorado Springs's custom, policy and/or practice.

75.     The customs, policies, and/or actual practices described herein were consciously implemented and approved by the City of Colorado Springs. They represent a deliberate choice to follow a course of action made from among various alternatives, and were a moving force behind the constitutional violations at issue, as detailed herein.

76.     Colorado Springs trains its officers, including Nelson and Detweiler, to engage in the law enforcement practices described herein and summarized in ¶ 73-74, and enforces and ratifies such law enforcement conduct, including in this case, further demonstrating that such conduct represents the custom, policy, and practice of the municipality.

77.     Defendant Colorado Springs has a custom, policy, or practice of initiating traffic stops based on race. Data from the Colorado Springs Police Department bears out a custom, policy, or practice of initiating traffic stops based on race. African-American males are stopped by the Colorado Springs Police Department 97% more often than would be expected based on their proportion in the population in Colorado Springs as of the 2010 Decennial United States Census. When looking at driving age population in Colorado Springs, African-American males are stopped by the Colorado Springs Police Department 120% more often than would be expected. When analyzing traffic stop data for daylight hours, the time when there is greater likelihood that racial identity played a role in a traffic stop, with daylight defined as 10 a.m. to 4 p.m., African-American males are stopped by the Colorado Springs Police Department 161% more often than would be expected based on their proportion in the population in Colorado Springs. Caucasian males, on the other hand, are consistently stopped by the Colorado Springs Police Department at rates consistent with the relative size of their population in the City, suggesting no racial bias on the part of officers when dealing with this population.

78.     Officer Defendants' removal and search of Plaintiffs was pursuant to Colorado Springs's custom, policy and/or practice of routinely conducting suspicionless searches of individuals stopped for an alleged traffic violation. In other words, Colorado Springs have a suspicionless traffic-stop-and-frisk program. The suspicionless traffic-stop-and-frisk program is racially-motivated and disproportionately impacts African-American drivers.

79.     The incident involving Ryan and Benjamin, standing alone, is sufficient evidence of the customs, policies and/or practices alleged in paragraphs **73-74, 77-78**, above. Yet, there is more. The police reports of Officer Nelson and Officer Detweiler, as well as several internal affairs interviews reflect detailed accounts of what the officers say occurred in this case. These reports and interviews are damning. They reflect an explicitly pre-textual stop motivated by race. They make clear that Ryan and Benjamin were both searched for weapons, yet provide no basis for a reasonable officer to suspect that either Ryan or Benjamin were armed or dangerous. Police records indicate that Benjamin was compliant with officer directives and was ostensibly accused of the most minor of offenses (obstructed view). Police records also indicate that Ryan had done nothing more than exercise his constitutional right to question the basis for the stop and to video record the stop.  Yet, two CSPD supervisors reviewed and approved the actions taken by Officer Nelson and Officer Detweiler. Sgt. Biscaro signed Officer Nelson's police report as the "approving supervisor" and Charles Potter signed Officer Detweiler's police report as the "approving supervisor," further demonstrating that the officers' conduct was pursuant to official City custom, policy and/or practice. Additionally, during an internal affairs interview after the incident, Sgt. Biscaro explicitly approved of and ratified the officers' actions in searching and arresting Ryan and Benjamin, stating "I don't have any problem with how they handled the situation." Finally, the Colorado Springs Internal Affairs Bureau concluded that the actions of the officers, as described *supra*, were "justified, legal and proper," further demonstrating that the officers' conduct was pursuant to official City custom, policy and/or practice. Given the intense media scrutiny the CSPD was undergoing while investigating this case,[1] there can be little doubt

---

[1] Kassondra Cloos, *ACLU: Video, police report raise questions about validity of Colorado Springs traffic stop*, COLORADO SPRING GAZETTE (May 3, 2015), http://gazette.com/aclu-video-police-report-raise-questions-about-validity-of-colorado-springs-traffic-stop/article/1550912; Stephen Hobbs, *Fellow cop says Colorado Springs police*

that the highest-ranking members of the CSPD reviewed and approved the conclusion of Internal Affairs. Indeed, on October 14, 2015, the CSPD released some of the internal affairs file to the public and issued a statement describing the contents of the file and implicitly justifying the conclusion of internal affairs that no wrongdoing had occurred.[2] Thus, there is strong evidence that line officers, supervisors, internal affairs, and the highest ranking members of CSPD all know of and condone the type of racially biased policing and suspicionless searches that occurred in this case.

***Failure to Train and/or Supervise***

80.     Defendant Colorado Springs had the responsibility to supervise and properly train its employees. The employees stopped Ryan and Benjamin Brown because they harbored stereotypical negative views of the criminal propensities of young, African-American males. The employees then proceeded to execute Colorado Springs' traffic-stop-and-frisk program, and used excessive force against Ryan and Benjamin Brown in executing this unconstitutional program. Each defendant violated Ryan and Benjamin Brown's constitutional rights during this encounter because they lacked proper training and supervision.

81.     Prior to this incident, the leadership of CSPD, including Sgt. Biscaro, were aware that Officer Nelson's conduct was consistent with his known propensity to escalate during

---

*officer may have escalated traffic stop*, COLORADO SPRING GAZETTE (October 8, 2015), http://gazette.com/fellow-cop-says-colorado-springs-police-officer-may-have-escalated-traffic-stop/article/1560909; Stephen Hobbs and Kassondra Cloos, *Case dismissed against Colorado Springs man who filmed traffic stop*, COLORADO SPRING GAZETTE (September 24, 2015), http://gazette.com/case-dismissed-against-colorado-springs-man-who-filmed-traffic-stop/article/1559983; AP, *Police look into video that ACLU calls racial profiling*, CBSNEWS (May 4, 2015 2:26 PM), http://www.cbsnews.com/news/colorado-springs-police-look-into-video-that-aclu-calls-racial-profiling/; Reuters, *Colorado's ACLU Says Two Black Men Were Victims of Police Bias, Racial Profiling*, THE HUFFINGTON POST (May 6, 2015 1:51 pm ET), http://www.huffingtonpost.com/2015/05/06/aclu-racial-profiling-bla_n_7224530.html; Donna Bryson, *Police look into video that ACLU calls racial profiling*, YAHOO! NEWS (May 4, 2015), https://www.yahoo.com/news/police-look-video-aclu-calls-racial-profiling-174327794.html?ref=gs.

[2] Emily Allen, *Police Chief issues statement on officers' actions during traffic stop*, KRDO.COM (October 14, 2015), http://www.krdo.com/news/Police-chief-issues-statement-on-officers-actions-during-traffic-stop/35843116.

encounters with the public. Officer Detweiler explained in her internal affairs interview that it was a "known thing" in their department that Officer Nelson "is super excitable and he escalates very rapidly," and "sometimes escalates things more than they need be." She explained that this unnecessary escalation happens "often." Sergeant Biscaro corroborated her characterization of Officer Nelson. During his interview, Biscaro described Officer Nelson as "a BB in a boxcar to start with, so he's kind of excitable." Upon information and belief, at the time of this incident, the City leadership and Sgt. Biscaro were aware of past incidents in which Officer Nelson inappropriately escalated during an encounter with members of the public and, as a result, engaged in unnecessary force. Yet, the City took no action or plainly insufficient action to better supervise or train Officer Nelson and thereby protect individuals such as Ryan and Benjamin from this foreseeable misconduct. Indeed, even after reviewing the evidence in this case, the City fully ratified Officer Nelson's conduct, rendering it more foreseeable that similar unconstitutional misconduct will reoccur in the future.

82.    Sgt. Biscaro intentionally overlooked and failed to properly counsel and supervise the obvious risk that Officer Nelson posed to the public. One explanation of this failure is that Sgt. Biscaro, like Officer Nelson, escalates during encounters with the public which has led to his use of excessive force. In January 2016, Sgt. Biscaro was arrested on charges of felony menacing and third degree assault. The charges were based on a complaint by two El Paso County Sheriff's Deputies that were on the scene when Sgt. Biscaro allegedly "threaten[ed] to kill a handcuffed man while choking him until he gasped for air."[3]

---

[3] Lance Benzel, *Colorado Springs police officer accused of felony gets time to work out plea deal*, COLORADO SPRING GAZETTE (March 31, 2016), http://gazette.com/colorado-springs-police-officer-accused-of-felony-gets-time-to-work-out-plea-deal/article/1573214

83.     Upon information and belief, none of the Defendant officers received proper training on racial profiling, including implicit bias. In addition, upon information and belief, none of the Defendant Officers were properly trained on the Fourth Amendment, and how to conduct a lawful traffic stop, seizure, search, and arrest.

84.     None of the Defendant officers were disciplined for their actions. This failure to discipline blatantly illegal and improper conduct is part of a custom or practice of failing to discipline officers for constitutional violations. By failing to discipline Defendant officers for their unconstitutional and illegal conduct, Colorado Springs ratified their conduct. These ratifications evidence that such police conduct is pursuant to the regimen of training provided by the City, and that such conduct is customary within the City's Police Department.

85.     It is the City's responsibility to properly train its officers to ensure they perform their duties correctly and to discipline, rather than ratify, their improper conduct, so that officers can learn from their mistakes and perform their jobs correctly moving forward. Failure of the City to do so has led to unconstitutional conduct by its officers and will lead to more unconstitutional conduct in the future. Indeed, upon information and belief, and based on Colorado Spring's responses to open records requests, CSPD has provided no additional training to any CSPD officers related to the incident with Benjamin and Ryan.

86.     As the employment entity, it is also Colorado Springs's responsibility to properly train its officers to ensure they perform their duties correctly and to discipline, rather than to encourage and ratify their conduct, so that officers can learn from their mistakes and perform their jobs correctly moving forward. Failure to do so led to the unconstitutional conduct in this case and will certainly lead to more unconstitutional conduct in the future.

87.     All of the acts described herein were done by the Defendants intentionally, knowingly, willfully, wantonly, maliciously and/or recklessly in disregard for Plaintiffs' federally protected rights, and were done pursuant to the preexisting and ongoing deliberately indifferent custom, policy, practice, training, and supervision of Defendant Colorado Springs acting under color of state law.

88.     With deliberate indifference to the rights of citizens to be free from racism and other unconstitutional conduct by law enforcement, the Defendant Colorado Springs has encouraged, tolerated, ratified, caused, and acquiesced to police racism and other unconstitutional conduct by:

a.  failing to conduct sufficient training or supervision with respect to the rights of citizens to be free from racism and other unconstitutional conduct in law enforcement;

b.  failing to adequately punish race-based or other unconstitutional conduct law enforcement actions;

c.  tolerating racism and race based selective law enforcement among the police force and in police decisions; and

d.  failing to properly investigate citizen complaints of racism, racial profiling, race based animus, excessive force, and other unconstitutional conduct and toleration of collusive statements by involved officers in such situations.

89.     It is the longstanding, widespread, deliberately indifferent custom, habit, practice and/or policy of the Defendant Colorado Springs to permit law enforcement officers to use race and race based animus as motivating factors in police decisions and actions, as well as to fail to

supervise and to train deputies in the rights of citizens to be free from such race based decision making in law enforcement.

*Municipal Liability*

90.     The unlawful conduct of Defendants, as set forth in detail herein, amounts to an custom and widespread practice, even if not authorized by written law or express municipal policy, so permanent and well settled as to constitute a custom or usage with the force of law.

91.     Defendant Biscaro was the employee with the final policymaking and supervisory authority on the scene, and he had authority over the subordinate law enforcement officers, Defendants Nelson and Detweiler.

92.     Through Defendant Biscaro's own unlawful conduct of condoning conduct of Defendants Nelson and Detweiler, Defendant Biscaro, on behalf of the Colorado Springs Police Department, ratified the unconstitutional practices of Defendants Nelson and Detweiler.

93.     Through the City of Colorado Springs' continuous ratification of racially motivated policing and suspicionless traffic-stop-and-frisk policing, the City has condoned the conduct of Defendants Nelson and Detweiler..

94.     Defendant Colorado Springs and Defendant Biscaro failed to properly train and supervise its or their employees to avoid the use of racially-based policing, excessive force, unlawful seizure, and unlawful search.

95.     Defendant Colorado Springs and Defendant Biscaro knew, or should have known, that its or his employees would use race as the motivating factor in initiating a traffic top of Plaintiffs, fail to use reasonable force, unlawfully seize, arrest, and prosecute Plaintiffs, and unlawfully search Plaintiffs, violating Plaintiffs' constitutional rights.

96.     Defendant Colorado Springs and Defendant Biscaro were deliberately indifferent to the constitutional rights of Plaintiffs, knowing that dangerous consequences could be suffered by Plaintiffs in failing to properly train and supervise its or his employees.

97.     Defendant Colorado Springs and Defendant Biscaro could have and should have pursued reasonable methods for the training and supervising of such employees, but failed to do so.

98.     Defendant Colorado Springs' and Defendant Biscaro's policies, customs, or practices in failing to properly train and supervise its employees were the moving force and proximate cause of the violation to Plaintiffs' constitutional rights.

99.     The custom, policy, and practice of Colorado Springs of encouraging, condoning, tolerating, and ratifying the use of racially-motivated policing, excessive force by law enforcement officers and the unlawful seizure, search, and false arrest of citizens, as described herein, and the subsequent cover-ups of such constitutional violations, were the moving force behind, and proximate cause of, the violation to Plaintiffs' constitutional rights.

100.    The acts or omissions of Defendant Colorado Springs caused Plaintiffs damages in that they suffered physical and mental pain, among other injuries, damages, and losses.

101.    The actions of Defendant Colorado Springs and Defendant Biscaro as described herein deprived Plaintiffs of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, and caused them other damages.

**FIRST CLAIM FOR RELIEF**
*42 U.S.C. § 1983 - Fourteenth Amendment*
*Denial of Equal Protection*
(Against All Defendants)

102.    Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

103.    Defendants were acting under color of state law in their actions and inactions which occurred at all times relevant to this action.

104.    At the time of the complained of events, Plaintiffs had the clearly established constitutional right to be free from racial discrimination in law enforcement by police officers and to enjoy the equal protection of the laws.

105.    Plaintiffs' race was a motivating factor in the decisions of Defendants to stop, detain and threaten Plaintiffs with weapons, as well as to search and then maliciously prosecute them with false charges. Officer Defendants' conduct was undertaken with the purpose of depriving Plaintiffs of the equal protection and benefits of the law, equal privileges and immunities under the law, and due process in violation of the Fourteenth Amendment.

106.    Officer Defendants stopped, pointed weapons at, searched and seized Plaintiffs, as described herein, without reasonable suspicion or probable cause to believe Plaintiffs had committed a crime and/or were carrying a weapon.

107.    Officer Defendants intentionally, willfully and wantonly stopped, pointed weapons at, searched and seized Plaintiffs, as described herein, wholly or in part due to their race.

108.    Officer Defendants' actions were objectively unreasonable in light of the facts and circumstances confronting them.

109.    Officer Defendants are also liable for their failure to intervene to prevent the constitutional violations of which they were aware and did nothing to prevent.

110.    Officer Defendants engaged in this conduct and were exonerated for this conduct pursuant to the municipal customs, policies and/or actual practices described herein.

111.     Defendant Colorado Springs failure to train and/or supervise, as described herein, was a legal and proximate cause of the Plaintiffs' injuries.

112.     Upon information and belief, Defendant Biscaro was the employee with the final policymaking authority on the scene, and had authority over his subordinate law enforcement officers, Defendants Nelson and Detweiler.

113.     Through Defendant Biscaro's own unlawful conduct, which condones the conduct of Defendants Nelson and Detweiler, and otherwise, Defendant Biscaro, on behalf of Colorado Springs, ratified the unconstitutional practices of Defendants Nelson and Detweiler.

114.     As a direct and proximate result of Defendants' actions, Plaintiffs have suffered and continue to suffer humiliation, emotional distress, loss of enjoyment of life, and other significant injuries, damages and losses.

**SECOND CLAIM FOR RELIEF**
*42 U.S.C. § 1983 - Fourth Amendment*
*Unlawful Seizure*
(Against All Defendants)

115.     Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

116.     Defendants were acting under color of state law in their actions and inactions which occurred at all times relevant to this action.

117.     Defendants Officers unlawfully seized Plaintiffs, both when they initially detained Plaintiffs and when they arrested Plaintiffs.

118.     Plaintiffs have a constitutionally protected right to be secure in their person against unreasonable seizures.

119.    No Officer Defendant at any time had probable cause, reasonable suspicion or any other legal basis to believe that Plaintiffs had committed or were committing any violation of the law prior to seizing and continuing to restrain their persons.

120.    Officer Defendants had no warrant authorizing any such seizure of Plaintiffs.

121.    No legally recognizable exigent circumstances existed which would have justified, or permitted, Officer Defendants' conduct.

122.    Officer Defendants' actions were objectively unreasonable in light of the circumstances confronting them.

123.    Officer Defendants intentionally, willfully and wantonly stopped and seized Plaintiffs, as described herein, without justification and, in whole or in part, due to their race.

124.    Officer Defendants are also liable for their failure to intervene to prevent the constitutional violations of which they were aware and did nothing to prevent.

125.    Officer Defendants engaged in this conduct and were exonerated for this conduct pursuant to the municipal customs, policies and/or actual practices described herein.

126.    Upon information and belief, Defendant Biscaro was the employee with the final policymaking authority on the scene, and had authority over his subordinate law enforcement officers, Defendants Nelson and Detweiler.

127.    Through Defendant Biscaro's own unlawful conduct, which condones the conduct of Defendants Nelson and Detweiler, and otherwise, Defendant Biscaro, on behalf of Colorado Springs, ratified the unconstitutional practices of Defendants Nelson and Detweiler.

128.    Defendant Biscaro's and Colorado Springs' failure to train and/or supervise, as described herein, was a legal and proximate cause of the Plaintiffs' injuries.

129.     As a legal and proximate result of Defendants' actions, Plaintiffs have suffered and continue to suffer humiliation, emotional distress, loss of enjoyment of life, and other significant injuries, damages, and losses.

### THIRD CLAIM FOR RELIEF
*42 U.S.C. § 1983 - Fourth Amendment*
*Unlawful Search*
(Against All Defendants)

130.     Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

131.     Defendants were acting under color of state law in their actions and inactions which occurred at all times relevant to this action.

132.     Plaintiffs have a legitimate expectation of privacy in their bodies and property being free from unreasonable governmental search.

133.     Officer Nelson unlawfully searched Benjamin and Officer Detweiler searched Ryan without any reason to believe either person was armed or dangerous.

134.     Officer Defendants had no warrant authorizing any such search of Plaintiffs bodies or property.

135.     No legally recognizable exigent circumstances or other legal justification existed which would have justified or permitted Officer Defendants' conduct.

136.     Officer Defendants' actions were objectively unreasonable in light of the circumstances confronting them.

137.     Officer Defendants engaged in these actions intentionally, willfully and wantonly.

138.     Officer Defendants' are also liable for their failure to intervene to prevent the constitutional violations of which they were aware and did nothing to prevent.

139.    Officer Defendants engaged in this conduct and were exonerated for this conduct pursuant to the municipal customs, policies and/or actual practices described herein.

140.    Defendant Biscaro's and Colorado Springs' failure to train and/or supervise, as described herein, was a legal and proximate cause of the Plaintiffs' injuries.

141.    Upon information and belief, Defendant Biscaro was the employee with the final policymaking authority on the scene, and had authority over his subordinate law enforcement officers, Defendants Nelson and Detweiler.

142.    Through Defendant Biscaro's own unlawful conduct, which condones the conduct of Defendants Nelson and Detweiler, and otherwise, Defendant Biscaro, on behalf of Colorado Springs, ratified the unconstitutional practices of Defendants Nelson and Detweiler.

143.    As a legal and proximate result of Defendants' actions, Plaintiffs have suffered and continue to suffer humiliation, emotional distress, loss of enjoyment of life, and other significant injuries, damages and losses.

## FOURTH CLAIM FOR RELIEF
*42 U.S.C. § 1983 - 4th Amendment*
*Excessive Force*
(Against All Defendants)

144.    Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

145.    At all relevant times hereto, Defendants were acting under the color of state law in their capacities as Colorado Springs law enforcement officers.

146.    At the time when Ryan was unlawfully apprehended and slammed head first into the snow by Defendant Nelson while held at gunpoint by Defendant Detweiler and held in handcuffs without any basis, Ryan had a clearly established constitutional right under the Fourth

Amendment to the United States Constitution to be secure in his person from unreasonable seizure through excessive force.

147.    At the time when Benjamin was unlawfully apprehended while being threatened with a taser by Defendant Nelson and held in handcuffs without basis, Benjamin had a clearly established constitutional right under the Fourth Amendment to the United States Constitution to be secure in his person from unreasonable seizure through excessive force.

148.    Any reasonable law enforcement officer knew or should have known of this clearly established right.

149.    Defendants engaged in the use of force that was objectively unreasonable in light of the facts and circumstances confronting them, violating Plaintiffs' Fourth Amendment rights.

150.    Defendants' actions, as described above, were motivated by intent to harm Plaintiffs.

151.    Defendants' actions, as described herein, were undertaken intentionally, maliciously, willfully, wantonly, and/or in reckless disregard of Plaintiffs' federally protected rights.

152.    Officer Defendants' are also liable for their failure to intervene to prevent the constitutional violations of which they were aware and did nothing to prevent. Defendants unreasonably used excessive force against Plaintiffs, resulting in injuries to Plaintiffs.

153.    The acts or omissions of Defendants were the moving force behind and proximate cause of Plaintiffs' injuries.

154.    The acts and omissions of Defendants were engaged in pursuant to the custom, policy, and practice of Colorado Springs, which encourages, condones, tolerates, and ratifies the

use of excessive force by law enforcement officers in the City, and covers up such unconstitutional behavior in response to complaints or other notice.

155.    Upon information and belief, Defendant Biscaro was the employee with the final policymaking authority on the scene, and had authority over his subordinate law enforcement officers, Defendants Nelson and Detweiler.

156.    Through Defendant Biscaro's own unlawful conduct, which condones the conduct of Defendants Nelson and Detweiler, and otherwise, Defendant Biscaro, on behalf of Colorado Springs, ratified the unconstitutional practices of Defendants Nelson and Detweiler.

157.    The acts or omissions of the individual Defendants and Defendant Colorado Springs caused Plaintiffs' damages in that they suffered physical and mental pain during the assault, other injuries, damages, and losses.

## FIFTH CLAIM FOR RELIEF
*42 U.S.C. § 1983 – First Amendment*
*Retaliation*
(Plaintiff Ryan Brown Against Defendants Nelson and Detweiler)

158.    Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

159.    Observing and recording police activities, without interfering with those duties, is a legitimate means of gathering information for public dissemination and is therefore speech protected by the First Amendment to the United States Constitution.

160.    Plaintiff engaged in observing and recording police activities.

161.    Plaintiff also engaged in the protected activity of speaking out in the face of police abuse.

162.    The use of force, search, arrest and charges against Plaintiff described in this complaint were caused by Nelson's and Detweiler's retaliatory animus toward Plaintiff's expressive activity.

163.    The arrests and charges against Plaintiff described in this complaint served no lawful purpose.

164.    Defendants caused Plaintiff to be arrested and charged without cause to believe that Plaintiff had committed any crime in retaliation for Plaintiff's expressive activity.

165.    Defendants are not entitled to qualified immunity for the complained-of conduct because they violated clearly established rights belonging to Plaintiff of which a reasonable person in Defendants' position knew or should have known. *See Glik v. Cunniffe*, 655 F.3d 78 (1st Cir. 2011) (recognizing the First Amendment right to record police activity); *Smith v. Cumming*, 212 F.3d 1332 (11th Cir. 2000) (same); *Fordyce v. City of Seattle*, 55 F.3d 436 (9th Cir. 1995); *ACLU v. Alvarez*, 679 F.3d 583 (7th Cir. 2012) (same); Statement of Interest of the United States, *Sharp v. Baltimore City Police Department, et al.,* No. 1:11-cv-02888-BEL (D. Md. Jan. 10, 2012), ECF No. 24 (same); *City of Houston v. Hill*, 482 U.S. 451 (1987) (recognizing a First Amendment right to verbally oppose or challenge police action).

166.    Upon information and belief, Defendant Biscaro was the employee with the final policymaking authority on the scene, and had authority over his subordinate law enforcement officers, Defendants Nelson and Detweiler.

167.    Through Defendant Biscaro's own unlawful conduct, which condones the conduct of Defendants Nelson and Detweiler, and otherwise, Defendant Biscaro, on behalf of Colorado Springs, ratified the unconstitutional practices of Defendants Nelson and Detweiler. Defendants' actions caused, directly and proximately, Plaintiff to suffer damages.

**SIXTH CLAIM FOR RELIEF**
*42 U.S.C. § 1983 – Fourth and Fourteenth Amendment*
*Malicious Prosecution*
(Plaintiff Ryan Brown Against Defendants Nelson, Biscaro, and Detweiler)

168.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

169.     Defendants, acting without probable cause, initiated groundless charges against Plaintiff Ryan Brown in order to maliciously bring about Plaintiffs' criminal prosecution.

170.     Defendants, acting knowingly, maliciously, willfully and wantonly, and evincing an intent to cover-up their unlawful actions, participated in the institution of legal proceedings against Plaintiff, including promoting the continued criminal prosecution of Plaintiff with knowledge that there were no reasonable grounds to believe that Plaintiff had committed any crime whatsoever and without sharing that knowledge with the prosecutor.

171.     Defendants acted knowingly, maliciously, willfully and wantonly by charging Plaintiff with a criminal offense in order to justify their prior use of excessive force, unlawful search, unlawful seizure, and discrimination in their stop and arrest of Plaintiff. Specifically, Officers Nelson and Detweiller, at the direction of Sergeant Biscaro, charged Ryan in an effort to cover up their own unlawful behavior during the course of his arrest.

172.     Without any legal basis to do so, Defendants participated in the malicious prosecution of Plaintiff with respect to their alleged behavior during the unlawful arrests by initiating baseless charges regarding the behavior of Plaintiff during his arrest, which was executed unlawfully, discriminatorily, and through the use of excessive force.

173.     Defendants were motivated in their participation in the prosecution of Plaintiff by an improper purpose to punish Plaintiff for the exercise of his legal rights to question police

conduct and video police interactions, to divert attention from and justify their own misconduct, and to insulate themselves from civil liability.

174.    Defendants' conduct violated clearly established rights belonging to Plaintiffs of which a reasonable officer in their position knew or should have known.

175.    As a direct result of Defendants' unlawful action as described above, Plaintiff suffered actual physical, emotional, and economic injuries in an amount to be proven at trial.

176.    Defendants' unlawful actions as described above were the proximate cause of, and moving force behind, Plaintiff's damages.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants, and grant:

(a)    Compensatory and consequential damages, including damages for emotional distress, loss of reputation, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

(b)    All economic losses on all claims allowed by law;

(c)    Punitive damages on all claims allowed by law and in an amount to be determined at trial;

(d)    Attorneys fees and the costs associated with this action on all claims allowed by law;

(e)    Pre and post-judgment interest at the lawful rate.

(f)    Any further relief that this Court deems just and proper, and any other relief as allowed by law.

**PLAINTIFFS REQUEST A TRIAL TO A JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this 12th day of October 2016.

KILLMER, LANE & NEWMAN, LLP

*s/ Darold W. Killmer*
_____
Darold W. Killmer
Andrew McNulty
1543 Champa Street, Suite 400
Denver, Colorado 80202
Phone: (303) 571-1000
Facsimile: (303) 571-1001
dkillmer@kln-law.com
amcnulty@kln-law.com

IN COOPERATION WITH THE AMERICAN CIVIL
LIBERTIES UNION FOUNDATION OF COLORADO

*s/ Mark Silverstein*
_____
Mark Silverstein
Sara R. Neel
Rebecca T. Wallace
303 E. 17th Street
Denver, Colorado 80203
Phone: (303) 777-5482
msilverstein@aclu-co.org
sneel@aclu-co.org
rtwallace@aclu-co.org

ATTORNEYS FOR PLAINTIFF